**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

---

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                          Civil Action No. 8:24-cv-425

Black Hills Nebraska Gas, LLC,

Brightspeed Kansas Holdings, LLC,                    **COMPLAINT**

and

Nebraska Public Power District,

      Defendants.

---

The United States of America ("United States"), by the authority of the Attorney General,
acting at the request of the Administrator of the United States Environmental Protection Agency
("EPA"), alleges as follows:

**<u>INTRODUCTION</u>**

1.      This is a civil action brought against Black Hills Nebraska Gas, LLC, d/b/a Black
Hills Energy ("Black Hills"), Brightspeed Kansas Holdings, LLC ("Brightspeed Kansas
Holdings"), and Nebraska Public Power District ("NPPD") (collectively "Defendants") pursuant
to Sections 106 and 107(a) of the Comprehensive Environmental Response, Compensation, and
Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607(a), as amended by the Superfund
Amendments and Reauthorization Act of 1986.  By this action the United States seeks recovery
of its costs incurred and to be incurred responding to releases and threatened releases of
hazardous substances at Operable Unit 1 ("OU-1") of the Iowa-Nebraska Light & Power
Company Superfund Site (the "Site") in Norfolk, Madison County, Nebraska.  Additionally, the

1

United States seeks an Order requiring Defendants to perform the remedial action selected for the Site.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action and over the parties under 28 U.S.C. §§ 1331 and 1345, and Sections 106, 107, and 113(b) of CERCLA, 42 U.S.C. §§ 9606, 9607, & 9613(b).

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that give rise to the claims occurred in this district.

## DEFENDANTS

4.      Defendant Black Hills Nebraska Gas, LLC, d/b/a Black Hills Energy, is a Limited Liability Company that is part of Black Hills Corporation and is a corporate successor to Aquila, Inc. ("Aquila").  Defendant Black Hills provides natural gas and electric utilities in eight states, including in Nebraska.

5.      Defendant Black Hills is headquartered in Rapid City, South Dakota and is licensed to do business in Nebraska.

6.      Defendant Black Hills is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

7.      Defendant Brightspeed Kansas Holdings, LLC, is a Limited Liability Company that is organized in Kansas and headquartered in North Carolina.

8.      Defendant Brightspeed Kansas Holdings is the corporate successor to Central West Public Service Company of Nebraska, Central Electric and Gas Company, Western Power and Gas Company, and Central Telephone and Utilities Corporation, which changed its name to Centel Corporation ("Centel") in 1976.

2

9.      On March 9, 1993, Centel merged with Sprint Corporation with the surviving entity continuing the name Centel Corporation.

10.     On October 4, 2022, Centel became a Limited Liability Company and changed its name to Brightspeed Kansas Holdings, LLC.

11.     Defendant Brightspeed Kansas Holdings is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

12.     Defendant NPPD is a publicly owned utility and a political subdivision of the State of Nebraska.

13.     Defendant NPPD is headquartered in Columbus, Nebraska.

14.     Defendant NPPD is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY FRAMEWORK

15.     CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a); 9601(25).

16.     Section 104 of CERCLA provides that "whenever any hazardous substance is released into the environment or there is a substantial threat of such a release into the environment . . . the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of . . . such hazardous substance, pollutant, or contaminant at any time."  42 U.S.C. § 9604.

17.     The President's authority under Section 104 of CERCLA, 42 U.S.C. § 9604, has been delegated to EPA pursuant to operative Executive Orders.

18.    Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States is also authorized to seek injunctive relief necessary to abate the imminent and substantial endangerment to the public health or welfare, or the environment, that may result from an actual or threatened release of a hazardous substance at or from a facility.

19.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) provides, in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only
> to the defenses set forth in subsection (b) of this section--
> (1) the owner and operator of . . . a facility,
>
> (2) any person who at the time of disposal of any hazardous
> substance owned or operated any facility at which such hazardous
> substances were disposed of, . . .
>
> shall be liable for—
>
> (A)  all costs of removal or remedial action incurred by the United
>      States Government . . . not inconsistent with the national
>      contingency plan.

20.    Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), provides: "in any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## THE SITE

21.    The Iowa-Nebraska Light & Power Company Superfund Site is located in downtown Norfolk, Nebraska.  Norfolk is a city with about 24,000 residents, located in northwest Nebraska, approximately 120 miles northwest of Lincoln, in Madison County.

22.    The Site sits on the lot west of 7th Street between Norfolk and Madison Avenues and is bisected by an alley running east/west between 7th and 8th Streets.

4

23.      The east portion of the Site north of the alley, as well as the northeast portion of the area south of the alley, is currently owned by Black Hills ("Black Hills Parcel").  Black Hills purchased the Black Hills Parcel in 2008.

24.      The remainder of the Site is currently owned by NPPD ("NPPD Parcel"). Consumers Public Power District acquired the NPPD Parcel in 1941 and merged with another power district in 1970 to create NPPD.

25.      In accordance with Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), EPA listed the Site on the National Priorities List in April 2016. 81 Fed. Reg. 20252.  The National Priorities List is a nationwide list of hazardous waste sites that pose the greatest threat to health, welfare, and the environment.  *See* 40 C.F.R. Part 300, Appendix B.

26.      The Site is the location of a former manufactured gas plant ("FMGP") which was situated on the Black Hills Parcel. The FMGP began operations around 1903 and ceased operations in 1948.  Manufacturing processes at the FMGP resulted in hazardous substances being released into the environment, including benzene, toluene, ethylbenzene, and xylenes (commonly referred to together as "BTEX"), naphthalene, heavy metals and other substances.

27.      Central Electric and Gas Company, one of Centel's corporate predecessors, purchased the Black Hills Parcel in 1945 and operated the FMGP until it ceased operations in 1948. Centel's predecessors continued to own the Black Hills Parcel until 1976.  Through mergers and name changes, Central Electric and Gas Company ultimately came to be Centel, which became Brightspeed Kansas Holdings in October 2022.

28.      Subsurface soil and groundwater samples collected by the EPA at the Site in 1990, 1991, and 1992 were contaminated with hazardous substances typically associated with

manufactured gas plants, including polynuclear aromatic hydrocarbons ("PAHs"), BTEX and heavy metals.

29.    In April 2007, EPA entered into an Administrative Settlement Agreement and Order on Consent ("ASAOC") with Centel and Aquila.  The ASAOC required Centel and Aquila to perform an Engineering Evaluation/Cost Analysis ("EE/CA") for a non-time-critical removal at the Site.  The EE/CA process included performing a field investigation and completing a risk assessment to characterize Site conditions.

30.    Site field investigation activities were conducted in November and December 2007, June and July 2009, and January 2010.  Visible contamination and tar and petroleum odors were observed during soil probes and well installation.  BTEX and PAHs were detected in all soil probes at the Site, with the highest concentrations present in samples collected in areas near the location of structures and buildings comprising the former gas plant.  Volatile organic compounds ("VOCs") and PAHs were detected in groundwater probe and monitoring well samples.  The most prevalent contaminants in the groundwater were BTEX and naphthalene which are common contaminants associated with manufactured gas plant sites.  Dense nonaqueous phase liquids ("DNAPLs") were detected from approximately eight to 34.5 feet below ground surface.

31.    In 2013, EPA issued a second ASAOC to Black Hills, Centel, and NPPD, requiring the completion of a non-time critical removal action to address risks posed by contaminants at the Site.  The removal action focused on the soil source areas of contamination but did not address groundwater contamination.  As part of the removal action, on-site buildings were demolished and approximately 10,425 tons of contaminated soil were excavated and

transported off-site for disposal.  The removal action, including on-site construction and restoration, was completed in June 2014.

32.    After the 2014 removal action, the FMGP buildings and associated infrastructure were removed from the Site, and the Black Hills Parcel—where the FMGP was once located—is now a paved parking lot.  The remainder of the Site consists of the NPPD Parcel, containing a two-story building formerly used as administrative offices, unoccupied since September 2010, and a fenced gravel lot used for equipment and vehicle storage.

33.    The Site's OU-1 consists of all remaining source materials, including remaining soil contamination and DNAPL, that were not addressed by the 2014 removal action.  The Site also has an Operable Unit 2 ("OU-2") which consists of sitewide groundwater and is not included in this action.  OU-2 will be addressed by EPA in a separate ROD.

34.    In 2017, EPA entered into a third ASAOC with Black Hills, Centel, and NPPD, for Defendants to perform a Remedial Investigation/Feasibility Study ("RI/FS") for OU-1.

35.    In 2019, as part of the RI/FS, EPA conducted a Human Health Risk Assessment ("HHRA") for OU-1 to estimate potential adverse human health effects caused by exposure to the hazardous substances at the Site in the absence of any actions to control or mitigate the exposures.  The HHRA determined that the contaminants of potential concern for OU-1 included PAHs, BTEX, pyrene, and arsenic.

36.    PAHs may be toxic to humans and animals via oral, dermal, or respiratory routes of exposure.  PAHs are slightly to moderately soluble in water and are soluble in other organic compounds such as benzene.  Some PAHs are known animal carcinogens.  Some PAHs are probable human carcinogens.

37.     BTEX are light aromatic compounds that have been detected at the Site.  Benzene is a known human carcinogen.  These compounds are toxic to humans and animals via oral, respiratory or dermal routes of exposure.  They are slightly soluble in water and volatile in the environment.

38.     Groundwater contamination has been found in the alluvial aquifer system underlying the Site.  Eleven active municipal drinking water wells and eight other public drinking water supply wells draw water from this aquifer system.

39.     In September 2022, EPA issued a Record of Decision ("ROD") selecting a remedy for OU-1.  The selected remedy calls for in-situ thermal treatment of the remaining soil contamination and DNAPL at the Site.  EPA estimates that it will take approximately four years of treatment for the selected remedy to achieve the remedial action objectives.

## GENERAL ALLEGATIONS

40.     Paragraphs 1 through 39 are realleged and incorporated by reference.

41.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

42.     "Hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including BTEX, naphthalene, and PAHs, have been, and continue to be, "released" from the Site into the environment within the meaning of Section 101(22) CERCLA, 42 U.S.C. § 9601(22).

43.     The hazardous substances described above, resulting from the operations of the FMGP, were "spilled," "discharged," or "disposed of" at the Site. 42 U.S.C. § 9601(22).  Such hazardous substances have been and continue to be found at the Site.

44.    The United States has incurred response costs related to the Site, including oversight costs and enforcement costs which have not yet been fully reimbursed by the Defendants.  The United States will continue to incur response costs in connection with the Site.

45.    The response actions taken by the United States at the Site were not inconsistent with the National Contingency Plan.  40 C.F.R. Part 300.

46.    It may become necessary for EPA to incur additional response costs in the future at the Site in order to abate the danger to public health or welfare and the environment posed by the releases and threatened releases of hazardous substances at the Site.

**FIRST CLAIM FOR RELIEF**
**Claim against Brightspeed Kansas Holdings under Section 107(a)(2) of CERCLA**

47.    Paragraphs 1 through 46 are realleged and incorporated by reference.

48.    Defendant Brightspeed Kansas Holdings assumed the liabilities of Centel in October 2022.

49.    Defendant Brightspeed Kansas Holdings is the legal successor in interest to persons who owned and operated the Site at the time of the disposal of hazardous substances at the Site.

50.    Defendant Brightspeed Kansas Holdings is therefore jointly and severally liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2) for all response costs incurred or to be incurred response to releases of hazardous substances at the Site.

**SECOND CLAIM FOR RELIEF**
**Claim against Black Hills and NPPD under Section 107(a)(1) of CERCLA**

51.    Paragraphs 1 through 46 are realleged and incorporated by reference.

52.    Defendant Black Hills has owned a portion of the Site since 2008.

53.    Defendant NPPD has owned a portion of the Site since at least 1970.

54.    Defendants Black Hills and NPPD are the present owners of the Site.

9

55.     Defendants Black Hills and NPPD are therefore jointly and severally liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), for all response costs incurred or to be incurred in response to the releases of hazardous substances at the Site.

## THIRD CLAIM FOR RELIEF
### Injunctive Relief under Section 106 of CERCLA

56.     Paragraphs 1 through 46 are realleged and incorporated by reference.

57.     Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), EPA has determined that there may be an imminent and substantial endangerment to public health or welfare, or the environment because of the actual and threatened releases of hazardous substances, including BTEX, naphthalene, pyrene, arsenic, and PAHs, at the Site.

58.     Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606, Defendants are subject to injunctive relief to abate the danger to public health or welfare and the environment posed by the actual and threatened releases of hazardous substances at the Site.

## PRAYER FOR RELIEF

59.     Wherefore, Plaintiff the United States respectfully requests that this Court:

a.   Enter judgment in favor of the United States, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding the Defendants jointly and severally liable for all response costs incurred by the United States in connection with OU-1 of the Site, including interest;

b.   Enter a declaratory judgment against Defendants, under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding the Defendants jointly and severally liable for any further response costs or damages to be incurred by the United States in connection with OU-1 of the Site;

c.  Order the Defendants to abate the conditions at the Site that may present an imminent

and substantial endangerment to the public health or welfare or the environment;

d.  Award the United States its costs of this action; and

e.  Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,


TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


Dated:  11/1/2024          /s/ *Danica Anderson Glaser*
                           DANICA ANDERSON GLASER
                           DC Bar No. 1005853
                           Senior Counsel
                           Environmental Enforcement Section
                           Environment and Natural Resources Division
                           United States Department of Justice
                           P.O. Box 7611
                           Washington, D.C. 20044-7611
                           (202) 514-5270
                           Danica.Glaser@usdoj.gov

OF COUNSEL:
Daniel Lyskowski
Office of Regional Counsel
United States Environmental Protection Agency
lyskowski.daniel@epa.gov